# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| BRADLEY AUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-1113 |
| ) | |
| CATERPILLAR INC., *et al*, ) | |
| ) | |
| Defendants. ) | |

## **OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion to Remand (ECF No. 16); Defendant Black and Decker's Motion to Dismiss (ECF No. 7); and Defendant Caterpillar Inc.'s Motion to Dismiss (ECF No. 9). For the reasons stated below, Plaintiff's Motion to Remand is DENIED and Defendants' Motions to Dismiss (7) and (9) are both GRANTED.

## BACKGROUND

Plaintiff Bradley Austin is a former employee of Defendant Caterpillar. (ECF No. 1-2 at 5). On or around April 20, 2018, Plaintiff injured his wrist while using an electric wrench that Defendant Caterpillar provided to him. *Id*. at 4–5. Defendant Black and Decker is the manufacturer of the wrench. *Id*. at 4. Plaintiff asserts that the clutch on the wrench did not engage, resulting in the wrench spinning around and twisting Plaintiff's right wrist. *Id*. Plaintiff claims that this caused severe and permanent injuries. *Id*. at 6. He claims that he is hindered from attending to his usual daily activities, that he has suffered and that he will continue to suffer great physical pain, and that he has spent and will continue to spend money for medical care. *Id*. Plaintiff further claims that the product was in an unreasonably dangerous condition while it was in possession of Defendant Caterpillar. *Id*. at 5.

Plaintiff initially filed his case in Livingston County bringing sixteen counts related to products liability and warranty claims ECF No. 1-2. Defendant Black and Decker timely removed, citing diversity jurisdiction and claiming that Plaintiff fraudulently joined Defendant Caterpillar for the purpose of destroying diversity. ECF No. 1. Plaintiff and Defendant Black and Decker are diverse parties, but Defendant Caterpillar and Plaintiff are citizens of the same state. Defendant argues that the Illinois Worker's Compensation Act ("IWCA") provides Plaintiff's exclusive remedy against his employer in this situation and that the claim is otherwise barred because Plaintiff signed a broad relief in settling his worker's compensation claim. Plaintiff argues that Defendant Caterpillar is a necessary party and that the case should at least proceed to discovery. The Court will first address Plaintiff's Motion to Remand to confirm that it has jurisdiction over these claims before turning to Defendants' two Motions to Dismiss.

I. **Motion to Remand**

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction. Section 1332(a)(1) confers jurisdiction to district courts to hear state law claims when complete diversity of citizenship exists between the parties: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). If a plaintiff files a case in state court even though the federal courts also have jurisdiction, the defendant may remove the case to federal court. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Section 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441.

Jurisdiction of the court generally depends upon the state of things at the time the action is brought. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004). An exception to this rule is applied when a party is "fraudulently joined." Fraudulent joinder may be found where a litigant makes "false allegations of jurisdictional fact," but is more commonly found where a plaintiff makes "a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). The party attempting to demonstrate fraudulent joinder "bears a heavy burden to show that, after resolving all issues of fact and law in favor of the non-moving party, the non-moving party cannot establish a cause of action." *Thornton v. M7 Aerospace, LP*, 796 F.3d 757, 765 (7th Cir. 2015) (citing *Poulos*, 959 F.2d at 73).

## DISCUSSION

Defendant Black and Decker filed a Response to Plaintiff's Motion to remand and argues that the Illinois Worker's Compensation Act bars Plaintiff's claims against Defendant Caterpillar and that in any event, Plaintiff already signed a settlement agreement releasing Defendant Caterpillar from any claims involving Plaintiff's injury with the electric wrench at work.[1] Without citing any relevant case law, Plaintiff responds that he needs discovery first and that the only effect the settlement could have on the present litigation would be to offset any judgment Plaintiff may obtain from this lawsuit. ECF No. 12 at 5. Finally, Plaintiff argues that to find that the settlement agreement had any effect on the current litigation, the Court must determine that Plaintiff intended

---

[1] In deciding whether Defendant Caterpillar was fraudulently joined, the Court considered Plaintiff's arguments in both its Response to Defendant Caterpillar's Motion to Dismiss (ECF No. 12) and Plaintiff's argument in its Motion to Remand (ECF No. 16), as the arguments overlapped and some of the arguments were better developed in Plaintiff's response brief.

3

the settlement to resolve all disputes, again suggesting that discovery is needed before the Court can decipher the Parties' intentions.

   A. **The Illinois Worker's Compensation Act is Plaintiff's exclusive remedy for negligent conduct at work.**

Generally, the Workers' Compensation Act provides the exclusive means by which an employee can recover against an employer for a work-related injury. *Folta v. Marine Servs. Co.*, 43 N.E. 3d 108, 113 (Ill. 2015) (citing *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E. 2d 1222 (Ill. 1990)). However, an employee can escape the exclusivity provisions of the Act if the employee establishes that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the Act. *Id.*; *see also Collier v. Wagner Castings Co.*, 408 N.E. 2d 198 (1980). As Defendant Black and Decker points out, Plaintiff filed a worker's compensation case against Caterpillar for this same incident and thus, acknowledged that this was an accidental injury arising from his employment and covered by IWCA. *See* ECF No. 10-3 at 4. Plaintiff's Complaint similarly reflects that his employer assigned him to work using the wrench and that while using the wrench to tighten screws, the clutch on the wrench failed to engage. ECF No. 1-2. The Court agrees that Plaintiff does not include factual allegations that would support a finding that the injury was anything other than accidental and occurred during the course of Plaintiff's employment.

Plaintiff also vaguely argues that his employer is a distributor of the wrench and thus, a required party. ECF No. 16 at 3. In his Response to Defendant Caterpillar's Motion to Dismiss, Plaintiff states that discovery is necessary to discover "what additional role Caterpillar may have played in causing Plaintiff's injuries." ECF No. 12 at 4. Defendant Black and Decker helpfully explains that in some limited circumstances a dual capacity exception applies, where plaintiffs show that their employer acted in two distinct capacities and they were injured as a result of

4

conduct their employer engaged while acting in the capacity other than that of employer. ECF No. 19 at 7 (citing *Murcia v. Textron, Inc.*, 795 N.E. 2d 773 (Ill. App. Ct. 2003)). Defendant further explains that Illinois Courts have held that supplying tools is a natural incident of the employer-employee relationship and does not give rise to dual capacity. ECF No. 19 at 7 (citing *Rosales v. Verson Allsteel Press Co.*, 354 N.E. 2d 553, 556 (Ill. App. Ct. 1976); *see also Murcia*, 795 N.E. 2d at 778 (holding that the mere fact the employer modified, changed, or altered the press that injured the employee did not impose upon it a second legal persona independent from and unrelated to its status as the employee's employer and the employee's claim was barred by the exclusive remedy provision of IWCA)). In *Rosales*, the plaintiff was injured using a punch press that the employer had modified by removing a safety control. The majority refused to find that the employer had become a quasi-manufacturer and held that providing tools does not constitute a second capacity of the employer. *Rosales*, 354 N.E. 2d 553. In *Murcia*, the court held that the mere fact that the employer had modified the press that injured the plaintiff did not impose obligations unrelated to those flowing from its status as an employer and plaintiff was unable to take advantage of the dual capacity doctrine. *Murcia*, 795 N.E. 2d at 779. Accordingly, the Court held that the IWCA barred the plaintiff's claims.

Plaintiff cites a case from the Northern District of Illinois to support his position that the IWCA exclusivity provisions "do not apply in cases where a manager or supervisor of a defendant was acting as an alter ego of the defendant." ECF No. 12 at 4 (citing *Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403, at *1 (N.D. Ill., 2016)). Plaintiff overlooks a critical piece of this exception that requires that the employer or its "alter ego" *intentionally* inflict harm upon an employee. *Jones*, 2016 WL at *2 (citing *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E. 2d 1222 (Ill. 1990)). In *Jones* the court further clarified that the Supreme Court of Illinois has held that torts

committed by coworkers are generally treated as accidental for the purpose of IWCA. *Id.* (citing *Meerbery*, 564 N.E. 2d at 1227). The facts of the case are also readily distinguishable from the present case. The plaintiff in *Jones* was a forklift operator and alleged that his supervisor tried to insist that he work another shift even though plaintiff told him he was too tired to safely do his job. *Id.* The supervisor apparently ordered the plaintiff to stay, but he left anyway. The supervisor then called the police and made false assault claims against the plaintiff. *Id.* The supervisor filed criminal charges and followed the purported charade so far as to falsely testify at the plaintiff's trial. *Id.* The plaintiff was acquitted and then brought a civil suit against his employer and supervisor. *Id.* There, the plaintiff alleged illegal and malicious wrongdoing that caused him severe distress. Thus, plaintiff's injury was not accidental and did not arise from work related conduct. Indeed, rather than support Plaintiff's position, this case highlights how drastic facts must be to place workplace conduct outside the realm of the Worker's Compensation Act.

Here, there is nothing in the Complaint to suggest that Plaintiff's injury was anything other than an accident that occurred at work. That his employer supplied him the wrench does not bring this case outside the coverage of the IWCA. Accordingly, Plaintiff's sole remedy against his employer is found in the Illinois Worker's Compensation Act and Plaintiff's present claims are barred.

**B. Plaintiff's broad release of claims bars this claim.**

Plaintiff also signed a settlement agreement with Defendant Caterpillar regarding his Worker's Compensation claim. That agreement included a broad release of claims where Plaintiff agreed that the contract was a,

> full, final and complete settlement to compromise all disputes and to avoid further litigation, for which the Petitioner agrees to forever release, acquit and discharge the Respondent from any and all Workers' Compensation and Occupational Disease Act claims,

> including all unpaid medical expenses, if any, all unpaid temporary total disability, if any, and demands for further medical, hospital, surgical, rehabilitation and miscellaneous expenses, for any injuries or disabilities, temporary or permanent, allegedly arising out of or in any way connected with the incident herein before set forth.

(ECF No. 9-4 at 2). The Settlement Agreement explained that injury occurred at work on April 20, 2018, from using a tool that malfunctioned, twisting his right wrist. *Id*. at 1. Plaintiff does not dispute that the same injury underlies both claims.

Given the broad release, Defendant Black and Decker argues that Plaintiff's claims are also barred by the doctrine of accord and satisfaction. To prove an accord and satisfaction, a party must demonstrate five factors: (1) a bona fide dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement. *Saichek v. Lupa*, 787 N.E. 2d 827, 832 (Ill. 2003). Plaintiff focuses on the intent element, arguing that discovery is necessary to understand the intent of the parties. Defendant readily supports the other elements, explaining that Plaintiff filing a worker's compensation claim satisfies the *bona fide* dispute requirement. Defendant continues that Plaintiff sought unliquidated damages, received a gross settlement, and executed the Settlement Contract compromising and disposing of Plaintiff's claims resulting from his alleged injury to meet elements two, three and five. Accordingly, the primary disagreement centers on the fourth element of a shared and mutual intent to compromise the claim, with Plaintiff arguing that discovery is necessary to resolve whether the parties intended the agreement to cover the claims found in the current Complaint.

Indeed, in interpreting a contract, Illinois courts' primary objective is to effectuate the intent of the parties. *Thompson v. Gordon*, 948 N.E. 2d 39, 47 (Ill. 2011); *Empress Casino Joliet Corp. v. W. E. O'Neil Constr. Co.*, 68 N.E. 3d 856, 869 (Ill. App. Ct. 2016). Courts first look to the plain language of the contract, and if the words are clear and unambiguous, then the courts give

7

them their plain, ordinary, and popular meaning. *Id*. Illinois courts only look to extrinsic evidence if the language is ambiguous in that it is susceptible to more than one meaning. *Id*. Here, the language, and thus the intention of the parties, is clear. Plaintiff's settlement agreement was the "full, final and complete" agreement to avoid "further litigation" and "compromise all disputes." ECF No. 9-4 at 2. The Settlement Agreement clearly relates to Plaintiff's wrist injury that underlies the current dispute. *Id.* at 1. Plaintiff does not attempt to argue that the settlement agreement referenced a different injury. Plaintiff released Defendant from further obligation to compensate him for his injuries and accepted $52,500 to release all these claims. *Id*. Plaintiff's argument that the Parties must engage in discovery before the Court can interpret the contract is without merit when the language of the contract is unambiguous. The Court agrees with Defendant that this claim is also barred by the terms of this settlement agreement. Thus, the Court finds that Defendant Caterpillar was fraudulently joined because the claims against Defendant Caterpillar have no chance of success both because the Illinois Worker's Compensation Act was Plaintiff's exclusive remedy and because the claim against Caterpillar is barred by the prior settlement agreement.

### C. Defendant meets the other requirements of diversity jurisdiction.

Removing Defendant Caterpillar from the equation leaves diverse parties with Defendant Black and Decker a citizen of Maryland and Plaintiff a citizen of Illinois. The other piece of diversity jurisdiction requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a)(1). Plaintiff acknowledges that he claimed that his requested relief exceeds $50,000 but argues that does not automatically mean that his damages exceed $75,000. He argues that this case is still in the early stages of discovery and there is not yet "an absolute and clear picture of Plaintiff's total damages." ECF No. 16 at 3. Accordingly, Plaintiff states this Court does not have subject matter jurisdiction "at this time." *Id*. Absent a controlling ad damnum clause in a complaint,

the defendant bears the burden of demonstrating, by a preponderance of the evidence that at least $75,000 is at stake. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence."); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

As Defendant points out, Plaintiff does not deny that the amount in controversy exceeds $75,000. ECF No. 19 at 10. In his Complaint, Plaintiff states that he has sustained "severe and permanent injuries and was, and will be, hindered and prevented from attending to his usual duties and affairs of life" and that he has "suffered great pain and anguish, both in mind and body and will, in the future, continue to suffer." ECF No. 1-2 at 37. When plaintiffs seek compensation for injuries they claim are severe and life threatening, courts often find that the amount in controversy exceeds $75,000. *See Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514–15 (7th Cir. 2006) (holding that diversity jurisdiction was proper where the plaintiff's complaint sought damages "in excess of $50,000" and alleged "severe and permanent" injuries); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006) (holding that the minimum amount in controversy for purposes of federal diversity jurisdiction was satisfied where the plaintiff's medical expenses and lost earnings amounted to $45,000, so that "[a] modest allowance for pain, suffering, and future losses (either income foregone or medical expenses incurred) brings the total over the threshold."); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428–29 (7th Cir. 1997) (holding the amount in controversy for diversity purposes was satisfied where the plaintiff's medical expenses amounted to $4,400 and the plaintiff sought damages for "future medical treatment and disability care, future pain and suffering, future mental anguish, loss of past wages and impairment of future earning capacity"). Plaintiff expressly claims over $50,000 of damages and his claims of lifelong injury that severely impacts his life and will continue to incur

medical expenses confirm that the amount in controversy is over $75,000. Defendant readily meets its burden to demonstrate jurisdiction by a preponderance of the evidence. Accordingly, this Court has jurisdiction, and it is appropriate to deny Plaintiff's Motion to Remand and resolve the remaining Motions to Dismiss.

## II.     Motions to Dismiss

Regarding the standard for fraudulent joinder, the Seventh Circuit has acknowledged that "[s]ome courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 764 (7th Cir. 2009). Since Defendant met the fraudulent joinder standard of demonstrating that there is no possibility of relief against Defendant Caterpillar, Defendant Caterpillar should be dismissed for the reasons stated above. Defendant Black and Decker also filed a Motion to Dismiss arguing that it should be dismissed due to Plaintiff's extended delay in serving it with the Complaint. Defendant Caterpillar adopted and incorporated Black and Decker's arguments in its Motion to Dismiss. ECF No. 9 at 2. As explained below, both Defendants are also subject to dismissal due to Plaintiff's failure to timely serve the Complaint.

### LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." Fed. R. Civ. P. 8. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). While a court

is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Id.* at 667.

The Federal Rules further permit a defendant to move to dismiss a claim if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Id.* (citing *Twombly,* 550 U.S. at 570). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 679. A threadbare statement of a claim supported by a conclusory statement is insufficient. *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

## DISCUSSION

### A. Lack of Reasonable Diligence in Serving Defendants

Defendant Black and Decker argues that Plaintiff failed to serve it within a reasonable time frame because Plaintiff delayed 11 months between filing the lawsuit and serving the Defendants. Defendant further observes that the statute of limitations on the majority of claims had long since expired by the time it was served. Accordingly, Defendant argues that the case should be dismissed in accordance with Rule 103(b) of the Illinois Supreme Court rules which states that a court may dismiss a case where "plaintiff fails to exercise reasonable diligence to obtain service on a defendant." Ill. Sup. Ct. R. 103(b).

Illinois courts have held that "even five months between the filing of a complaint and subsequent service is sufficient to establish a *prima facie* showing of failure to diligently effect service." *Emrikson v. Morfin*, 977 N.E. 2d 1165, 1169 (Ill. App. Ct. 2012) (citing *Verploegh v. Gagliano*, 922 N.E. 2d 428 (2009)). Once the defendant has made a *prima facie* showing of a lack of reasonable diligence, the burden shifts to the plaintiff to demonstrate that reasonable diligence

was exercised. *Mular v. Ingram*, 33 N.E. 3d 771, 778 (Ill. App. Ct. 2015). "It is incumbent upon the plaintiff to explain, by way of affidavit or other competent evidentiary materials, that the delay in service was reasonable and justified under the circumstances." *See Stoller v. Jams*, 2020 WL 3066448, at *4 (Ill. App. Ct. 2020) (citing *Kole v. Brubaker*, 759 N.E. 2d 129, 134 (Ill. App. Ct. 2001)). Defendants are not required to establish that they were prejudiced by plaintiff's delay before the burden shift to plaintiff to demonstrate reasonable diligence. *Long v. Elborno*, 875 N.E. 2d 1127, 1134 (Ill. App. Ct. 2007) (internal citations omitted).

In determining whether a plaintiff exercised reasonable diligence in effectuating service, Illinois courts consider (1) the length of time used to obtain service of process, (2) the activities of the plaintiff during that time period, (3) the plaintiff's knowledge of the defendant's location, (4) the ease with which the defendant's whereabouts could have been ascertained, (5) actual knowledge on the part of the defendant concerning the pendency of the action, (6) any special circumstances affecting the plaintiff's efforts at service, and (7) actual service on the defendant. *Kole*, 759 N.E. 2d at 134 (citing *Segal v. Sacco*, 555 N.E. 2d 719, 720 (Ill. 1990); *Kreykes Elec. Inc. v. Malk and Harris*, 697 N.E. 2d 885, 888 (Ill. App. Ct. 1998)). A primary reason for the passage of Rule 103(b) was to prevent the intentional delay of service of summons upon a defendant for an indefinite amount of time in order to circumvent the applicable statute of limitations. *Emrikson*, 977 N.E. 2d at 1169; (citing *Karpiel v. LaSalle National Bank of Chicago*, 255 N.E. 2d 61, 63 (Ill. App. Ct. 1970)). Illinois courts have further observed that a delay in service in a case filed close to the expiration of the statute of limitations further supports dismissal. *Giunta v. Heritage Woods of Bolingbrook*, 2020 WL 3412902 (Ill. App. Ct. 2020) (citing *Mular*, 33 N.E. 3d at 78); *see also Polites v. U.S. Bank National Association*, 836 N.E. 2d 133, 141 (Ill. App. Ct. 2005)).

Plaintiff's only explanation for this 11-month delay was the pandemic. Plaintiff mentions that there were "restrictions imposed upon the functioning of various state and federal court systems by said pandemic, as well as upon county sheriff's office and private process servers." ECF No. 13 at 2. Indeed, there was a time during the pandemic where there were many restrictions and that could excuse certain delays. However, Plaintiff does not point to specific restrictions, how long those restrictions lasted, and does not attempt to explain what actions he took during those 11 months. Plaintiff does not explain why, precisely, service took so long and focuses on the special circumstance exception without addressing the other factors courts consider in determining whether a plaintiff exercised reasonable diligence.

Illinois courts have found a five-month delay *prima facie* evidence of a lack of reasonable diligence. *Emrikson*, 977 N.E. 2d at 1169. Accordingly, Plaintiff bears the burden of justifying this eleven-month delay. Here, Plaintiff should have had no trouble locating his former employer. As Defendant points out, Plaintiff apparently did not have great difficulty serving Defendant Black and Decker once the summons was issued since Plaintiff served Black and Decker shortly after he received the summons. The excuse of the pandemic alone does not justify such an extensive delay when Plaintiff does not attempt to explain his specific circumstances.

Moreover, the statute of limitations on several of the claims ran shortly after Plaintiff filed his Complaint. In Illinois, the statute of limitations for a personal injury claim is two years from the date of the alleged injury. 735 Ill. Comp. Stat. Ann. 5/13-202. Illinois has a statute of repose for products liability claims, which provides that the claim must be brought within two years after the date on which the claimant knew or through the use of reasonable diligence should have known, but in no event shall such action be brought more than 8 years after the date on which such personal injury occurred. 735 Ill. Comp. Stat. 5/13–213(d). Plaintiff agrees that his injury occurred around

April 20, 2018. Accordingly, the statute of limitations expired for Plaintiff's products liability and negligence claims on April 20, 2020. Plaintiff did not serve Defendant Black and Decker until March 2021, nearly a year after Plaintiff's statute of limitations had run. When "a plaintiff waits until close to the expiration of the limitations period to file suit, a lengthy delay in service nullifies the protection against stale claims the statute of limitations is designed to afford." *Giunta*, 2020 WL 3412902 at *5 (citing *Mular*, 33 N.E. 3d at 78). Thus, a delay in service in a case filed close to its expiration may not be excused while the same delay in a case filed well in advance of the expiration of the statute of limitations may be excused. *Id*.

      The Court agrees with Defendant that the expiration of the statute of limitations on the personal injury and product liability claims further supports dismissal. Pursuant to Rule 103(b), the Court further agrees that dismissal with prejudice on the products liability and personal injury claims is appropriate since the statute of limitations had expired. Ill. Sup. Ct. R. 103 (b) (stating that if the failure to exercise reasonable diligent occurs after the expiration of the statute of limitations, the dismissal "shall be with prejudice"). Plaintiff's breach of warranty claim had to be commenced within four years of the delivery of goods regardless of the buyer's lack of knowledge of the breach. 810 ILCS 5/2-725(2). The Court does not have enough information to determine whether the statute of limitations has expired on Plaintiff's breach of warranty claims. Accordingly, it is appropriate for the Court to dismiss those claims without prejudice.[2] *See* Ill. Sup. Ct. R. 103 (b).

---

[2] Defendant Black and Decker limited its briefing to the arguments addressed in this Order. Accordingly, the Court will not address the other potential obstacles to Plaintiff's warranty claims at this time.

## CONCLUSION

For the reasons stated above, it is ORDERED as follows:

(1) Plaintiff's Motion to Remand [16] is DENIED;

(2) Defendant Caterpillar's Motion to Dismiss [9] is GRANTED;

(3) All claims against Defendant Caterpillar are DISMISSED with prejudice;

(4) Defendant Black and Decker's Motion to Dismiss [7] is GRANTED;

(5) Counts I, II, III, IV, and V against Defendant Black and Decker are DISMISSED with prejudice; and

(6) Counts VI, VII, VIII against Defendant Black and Decker are DISMISSED without prejudice.

The Clerk of the Court is DIRECTED to CLOSE this case.

ENTERED this 20th day of December, 2021.

                                                /s/ James E. Shadid
                                                    James E. Shadid
                                          United States District Judge